UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| | |
|---|---|
| KEVIN B. WRIGHT, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) No. 7:23-cv-64-REW |
| | ) |
| v. | ) |
| | ) OPINION AND ORDER |
| RUTH A. THACKER COOK, *et al.*, | ) |
| | ) |
| Defendants. | ) |
| | ) |

\*\*\* \*\*\* \*\*\* \*\*\*

I. **Background**

This lawsuit represents the aftermath of a two-car collision in Pike County, Kentucky, on May 20, 2023. *See generally* Compl. (DE 1-1 at 1–23). One vehicle was driven by Plaintiff Kevin B. Wright and the other by Defendant Ruth A. Thacker Cook. *See id.* ¶¶ 11, 13. As alleged, the collision caused severe bodily injuries to Kevin[1] and his passengers. *See id.* ¶ 13. His passengers included his wife (Plaintiff Pamela Wright) and four minors. *See id.* ¶¶ 3–6, 11–12, 58, 65. Plaintiff Hollie Bell was the owner of the vehicle driven by Kevin, but Bell was not a passenger during the accident. *See id.* ¶¶ 11–12.

Plaintiffs Kevin, Pamela (individually and as next friend of minor passengers D.W., S.W., and K.C.W.), and Bell (as next friend of minor passenger J.T.) filed the instant action in Pike Circuit Court, bringing negligence claims against Cook for personal injuries. *See id.* ¶¶ 1–6, 15–50. Additionally, Plaintiffs seek to recover underinsured motorist ("UIM") coverage benefits from Defendants Integon Indemnity Corporation (the insurer of Bell's vehicle), American Family Home Insurance Company (the insurer of a collector vehicle owned by Kevin and Pamela), and Liberty

---

[1] Because some plaintiffs share a common surname, the Court will refer to the plaintiffs by their first names as necessary.

1

Mutual Personal Insurance Company (the insurer of another vehicle owned by Kevin and Pamela). *See id.* ¶¶ 51–68. Liberty Mutual also brings a cross-claim against Cook for subrogation. *See generally* Liberty Mutual Answer and Cross-Cl. (DE 1-1 at 24–37). Cook removed the action to this Court under 28 U.S.C. §§ 1441 and 1332 on the basis of diversity jurisdiction. *See* DE 1 (Notice of Removal).

The American Family Policy covers a 1951 Chevrolet 3100 owned by Kevin and Pamela and includes UIM coverage. *See* DE 37-2 (Ex. A, Policy) at 5–6, 48–52. Now, American Family moves for summary judgment, arguing that Plaintiffs are not, as to this claim, eligible to recover UIM benefits under the Policy. *See* DE 37 (Motion). Plaintiffs responded, *see* DE 39, and American Family replied, *see* DE 40. The matter is ripe for review.

## II.    Summary Judgment Standard

Pursuant to Federal Rule of Civil Procedure 56(a), summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ P. 56(a). In determining whether a genuine dispute exists, the Court considers all facts and draws all inferences in the light most favorable to the non-moving party. *See Matsushita Elec. Indust. Co., Ltd. v. Zenith Radio Corp.*, 106 S. Ct. 1348, 1356 (1986); *Lindsay v. Yates*, 578 F.3d 407, 414 (6th Cir. 2009). The moving party bears the initial burden of showing the absence of a genuine dispute of material fact. *See Celotex Corp. v. Catrett*, 106 S. Ct. 2548, 2553 (1986). If the moving party satisfies its burden, the burden then shifts to the non-moving party to produce "specific facts" showing a "genuine issue" for trial. *Id.* "A genuine dispute of material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Wright v. City of Euclid*, 962 F.3d 852, 864 (6th Cir. 2020) (citation and quotation marks omitted). Indeed, "the plaintiff must present affirmative evidence in order to defeat a properly supported

2

motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 106 S. Ct. 2505, 2514 (1986). However, "Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, on which that party will bear the burden of proof at trial." *Celotex Corp*, 106 S. Ct. at 2552.

### III. Analysis

Parties do not dispute that Kentucky law applies.[2] *See* DE 37-1 (Memorandum in Support) at 5; DE 39 at 3. In Kentucky, "[i]nterpretation and construction of an insurance contract is a matter of law for the court." *Kemper Nat.'l Ins. Cos. v. Heaven Hill Distilleries, Inc.*, 82 S.W.3d 869, 871 (Ky. 2002). In interpreting insurance policies, courts are "bound by the specific language of the contract," *Foreman v. Auto Club Prop.-Cas. Ins. Co.*, 617 S.W.3d 345, 349 (Ky. 2021), and enforce the policies "as written," *Kemper*, 82 S.W.3d at 873. The terms of an insurance policy have "no technical legal meanings," but instead, courts construe the terms as "a lay reader" would understand them. *See Thomas v. State Farm Fire & Cas. Co.*, 626 S.W.3d 504, 507 (Ky. 2021). Courts generally resolve "perceived ambiguities and uncertainties in the policy terms . . . in favor of the insured." *Id.* at 506–07. However, this general rule does not mean that the courts must resolve "every doubt" against the insurance company. *See St. Paul Fire & Marine Ins. Co. v. Powell-Walton-Milward, Inc.*, 870 S.W.2d 223, 226 (Ky. 1994). The policy still "must receive a reasonable interpretation consistent with the parties' object and intent or [as] narrowly expressed in the plain meaning and/or language of the contract." *Id.*

---

[2] The case is in federal court based on diversity of citizenship, 28 U.S.C. § 1332. *See* DE 1. Because Kentucky is the forum state, Kentucky substantive law properly governs this action. *See Erie R.R. v. Tompkins*, 58 S. Ct. 817, 827–28 (1938); *Rawe v. Liberty Mut. Fire Ins. Co*., 462 F.3d 521, 526 (6th Cir. 2006) ("As we are sitting in diversity, we apply the substantive law of Kentucky, the forum state.").

3

The American Family Policy's UIM coverage provisions state:

A.     "We" will pay compensatory damages which an **insured** is legally entitled to recover from the owner or operator of an **underinsured motor vehicle** because of **bodily injury**:

      1.     Sustained by an **insured**; and
      2.     Caused by an accident. . . .

B.     **Insured** as used in this endorsement means:

      1.     "You" or any **family member**:
           a.     While **occupying your covered auto**; or
           b.     As a pedestrian when struck by a motor vehicle designed for use mainly on public roads or a **trailer** of any type.

      2.     Any other person **while occupying your covered auto.**

      3.     Any person for damages that person is entitled to recover because of **bodily injury** to which this coverage applies sustained by a person described in **1.** or **2.** above.

DE 37-2 at 48 (emphasis in original, indicative of defined or referenced terms). The Policy defines "you" as the "'named insured' shown on the Declarations" and the named insured's "spouse if a resident of the same household and if shown on the Declarations as an operator." *Id.* at 12. In this case, the term "you" refers to Kevin (the Named Insured) and Pamela (his spouse)[3]. *See id.* at 5. As relevant here, "your covered auto" is "[a]ny vehicle shown on the Declarations which is a collector vehicle," i.e., the 1951 Chevrolet. *Id.* at 6, 15 (emphasis omitted). "Occupying" means "[i]n," "[u]pon," or "[g]etting in, on, out or off" the 1951 Chevrolet. *Id.* at 14.

Based on the plain language of the Policy, a person is eligible to receive UIM coverage if that person sustains bodily injury caused by an accident (one resulting in liability of an underinsured motor vehicle operator), and the injured person is an "insured." As set forth in the

---

[3] Pamela is identified as a driver on the Declarations Page, *see* DE 37-2 at 5, and in an affidavit, she states that she is a resident of the same address listed for Kevin on the Declarations Page, *see id.*; DE 1-1 (Compl., Ex. A., Wright Aff.) at 20.

4

Policy, an "insured" thus includes only the following individuals under only the following conditions: Kevin, Pamela, or their family member while "occupying" the 1951 Chevrolet; Kevin, Pamela, or their family member as a pedestrian; any other person "occupying" the 1951 Chevrolet; or any person entitled to recover damages because of bodily injury to anyone falling within the preceding categories (i.e., hypothetically, a consortium or other derivative loss, perhaps)[4]. The allegations here involve occupants, not pedestrians. *See* Compl. ¶¶ 11–13. Therefore, Plaintiffs are only eligible for UIM coverage under the Policy if the Plaintiffs were "occupying" the 1951 Chevrolet at the time of the accident.

American Family argues that Plaintiffs are not eligible for UIM coverage because the evidence undisputedly establishes that none was "occupying" the 1951 Chevrolet when the accident occurred. *See* DE 37-1 at 10. Plaintiffs do not contest this status. *See* DE 39 at 4. Nonetheless, Plaintiffs maintain that they are still eligible for UIM coverage under the American Family Policy for two central reasons: 1) Plaintiffs had a "reasonable expectation" of UIM coverage, and 2) UIM coverage is "personal to the person who purchased [it]." *Id.* at 3–4, 6–7. The Court will address both arguments in turn. To Plaintiffs, a named insured automatically enjoys UIM coverage. That is extracontractual and not the law.

    a.    **The Reasonable Expectations Doctrine**

"The rule of interpretation known as the 'reasonable expectations doctrine' resolves an insurance policy ambiguity in favor of the insured's reasonable expectations." *Ky. Emps.' Mut. Ins. v. Ellington*, 459 S.W.3d 876, 883 (Ky. 2015) (citation and quotation marks omitted). The purpose of the doctrine is to guarantee that the insured receives the coverage that he "may reasonably expect" to receive under the policy. *See id.* (citation and quotation marks omitted). However, the

---

[4] Plaintiffs make no argument under this third category.

5

reasonable expectations doctrine *only* applies if the relevant policy provision contains an ambiguity. *See True v. Raines*, 99 S.W.3d 439, 443 (Ky. 2003) ("Only actual ambiguities, not fanciful ones, will trigger application of the doctrine.").

Plaintiffs contend that Kevin and Pamela "could have reasonably expected that if their policy clearly afforded UIM coverage if they were pedestrians struck by a motor vehicle, then it would afford coverage when they were guest passengers in someone else's vehicle." *See* DE 39 at 7. As American Family points out, this argument fails at the outset: Plaintiffs have not identified *any* ambiguity within the Policy's UIM coverage provisions. *See* DE 40 at 3. The lack of identifiable ambiguity alone is enough to bar Plaintiffs' invocation of the reasonable expectations doctrine. *See Celotex Corp*, 106 S. Ct. at 2552 (explaining that, on summary judgment, a party must "make a showing sufficient to establish the existence of an element essential to that party's case, on which that party will bear the burden of proof at trial"). Without ambiguity, the coverage matter reduces to a question of law for the Court.

Regardless, and as Plaintiffs do not really attempt to dispute, the Policy's UIM coverage provisions are unambiguous, clear, and reasonable. Again, plainly and as written, the UIM coverage only potentially applies when: Kevin, Pamela, or their family member was injured in an accident while occupying the 1951 Chevrolet or as a pedestrian; any other person was injured in an accident while occupying the 1951 Chevrolet; or a person is entitled to recover damages based on bodily injury to someone identified within the preceding categories. Plaintiffs unequivocally concede that they do not fall within any of these classifications. Plaintiffs bring this action on behalf of occupants in a motor vehicle that is not a "covered auto"; the case does not concern pedestrians. *See* Compl. ¶¶ 11–13. None of the Plaintiffs was occupying the 1951 Chevrolet at the time of the accident. *See* DE 39 at 4. Therefore, no genuine dispute of material fact exists as to

whether Plaintiffs qualify as "insureds" under the Policy's UIM provisions. Because they don't, Plaintiffs are not entitled to UIM benefits pursuant to the Policy. *See Isaacs v. Sentinel Ins. Co. Ltd.*, 607 S.W.3d 678, 682 (Ky. 2020) ("This is a reasonable UIM exclusion provision and we will not disturb the parties' contractual rights in the absence of an ambiguity.").

Even if Plaintiffs successfully identified an ambiguity in the Policy's UIM coverage provisions, the Plaintiffs' purported rationale is based on Kevin and Pamela's subjective expectations about the scope of the UIM coverage, not on language in the Policy. However, reasonable expectations are not a matter of the insured's "subjective belief" but are based on "the policy language as a layman would understand it." *Sparks v. Trustguard Ins. Co.*, 389 S.W.3d 121, 128 (Ky. Ct. App. 2012). In this case, a layman would understand the Policy to only provide UIM coverage when the 1951 Chevrolet was involved, in the "occupying" sense, in the underlying accident, unless the relevant person was a qualifying pedestrian. Outside of the pedestrian carve-out, the Policy consistently requires the claimant to have suffered injuries "while occupying" the 1951 Chevrolet. A layman would accordingly interpret the Policy as predicating UIM coverage on some connection between the 1951 Chevrolet, the accident, and the occupant's injuries, subject to the pedestrian carve-out. The pedestrian carve-out is the only way to recover UIM benefits under the Policy without an explicit link to the 1951 Chevrolet. Despite their reliance on the pedestrian carve-out, Plaintiffs make no attempt to explain why the carve-out logically extends to permit UIM coverage whenever a policyholder is injured as a passenger of any (even non-covered) car.[5] Nothing

---

[5] As a policy matter, the pedestrian carve-out makes good sense. The carve-out seemingly fills in a potential gap in UIM coverage for incidents involving motor vehicles and pedestrians—i.e., it is not customary (or legally mandated) for individuals to maintain a sort of "pedestrian insurance" like they would auto insurance. A similar gap may not exist when a policyholder is a passenger in another vehicle; presumably, *that* vehicle's UIM policy, if any exists, would cover the passenger. Regardless, the rationale for the extent of UIM coverage in a given policy is ultimately irrelevant in the instant context of a bargained-for insurance contract.

in the Policy's language suggests that the UIM coverage applies in other settings or attaches while the policyholder is occupying *other* vehicles. Therefore, a layman would not reasonably expect to recover UIM benefits under this Policy when he was injured as a passenger of a vehicle other than the 1951 Chevrolet.

Accordingly, the reasonable expectations doctrine does not save Plaintiffs' claim against American Family for UIM coverage.

b. **The Personal Nature of UIM Coverage**

Plaintiffs also argue that they are eligible for UIM coverage under the American Family Policy because such coverage is "personal to the person who purchased [it]." DE 39 at 4. And because UIM coverage is "personal," and Kevin is the named insured, Plaintiffs may recover UIM benefits under the Policy whenever they are injured as a passenger of any vehicle, not limited to the 1951 Chevrolet. *See id.* at 1, 6–7.

This concept originates from *Chaffin v. Kentucky Farm Bureau Insurance Companies*, 789 S.W.2d 754 (Ky. 1990), where the Kentucky Supreme Court held that *uninsured* motorist coverage (in comparison to *underinsured* motorist coverage)[6] is "personal to the insured" and based on the insured's "reasonable expectation that such coverage will be afforded." *See Chaffin*, 789 S.W.2d at 756. The import of the rule is that this type of insurance "follow[s] the insured regardless of whether the insured is injured as a motorist, a passenger in a private or public vehicle, or a pedestrian." *Dupin v. Adkins*, 17 S.W.3d 538, 543 (Ky. Ct. App. 2000). The Kentucky Supreme Court extended the *Chaffin* rationale to UIM coverage in *Allstate Insurance Company v. Dicke*, 862 S.W.2d 327 (Ky. 1993). *See Dicke*, 862 S.W.2d at 329. But in *Philadelphia Indemnity*

---

[6] Uninsured motorist coverage is generally referred to as "UM coverage," while underinsured motorist coverage is generally referred to as "UIM coverage." The Court uses this same terminology.

8

*Insurance Company, Inc. v. Tryon*, 502 S.W.3d 585 (Ky. 2016),[7] the same court eroded the general rule that coverage is "personal to the insured" in the context of UIM benefits, explaining: "UIM coverage exclusions are not impermissible under Kentucky public policy and parties are at liberty to negotiate and customize policies to fit their own needs and desired levels of coverage." *See Tryon*, 502 S.W.3d at 592.[8]

Per *Tryon*, the UIM limitations in the Policy (here, that the relevant person suffered injuries while occupying the 1951 Chevrolet or as an eligible pedestrian) are clear and permissible exclusions. Simply, the allegedly personal nature of UIM coverage does not override the plain language of the Policy and its exclusions or limitations.[9] Plaintiffs want to measure their expectations subjectively and based only on consideration of certain excerpts from the Policy. The Court, though, must account for the full Policy language, and here, that language forecloses the notion that merely being named as insured equates to UIM coverage irrespective of the balance of the Policy's qualifications as applied to the factual scenario of a concrete claim. The full picture signals no coverage as a matter of law.

---

[7] In support of their position, Plaintiffs cite to various passages from the partial *dissent* in *Tryon*. *See* DE 39 at 5. However, this Court cannot justify deviating from a well-reasoned majority opinion from the state's high court, regarding the law in Kentucky no less, to instead rely on a non-precedential dissent.

[8] The Kentucky Supreme Court also called into doubt the utility of *Chaffin* as applied to UM coverage:

> This opinion does not necessarily overrule *Chaffin* or its precedent with respect to UM coverage. But we do question whether the *Chaffin* Court's reasonable-expectation analysis truly synthesizes Kentucky contract principles or simply exists as a categorical rule to ensure that insureds always recover. But that issue is not before us today. For now, we can only state with certainty today that Kentucky public policy does not bar reasonable UIM exclusion provisions.

*Tryon*, 502 S.W.3d at 592.

[9] Even if this concept applied to the Policy's UIM provisions, Kevin is the only "[n]amed [i]nsured" under the Policy. *See* DE 37-2 at 5. The Court is thus doubtful that the UIM coverage would be "personal" to the other plaintiffs such that the full scope of the coverage would apply with equal force.

Plaintiffs do not dispute that the passengers were in another (not covered) vehicle at the time of the accident. Because the passengers were not injured while occupying the 1951 Chevrolet, they do not qualify for UIM coverage under the Policy as a matter of law. Plaintiffs cannot rely upon the reasonable expectations doctrine or the personal nature of UIM coverage to overcome summary judgment. Accordingly, the Court grants American Family's motion for summary judgment.

## IV. Conclusion

For the foregoing reasons, the Court **GRANTS** DE 37. The Court **DISMISSES** Plaintiffs' claim against American Family with prejudice and **DISMISSES** American Family as a party to this action.

This the 6th day of September, 2024.

Signed By:
Robert E. Wier  *REW*
United States District Judge